BETTY CHURCH McMANUS, MOTHER; ERNEST McMANUS, FATHER; OF NORMAN HAROLD McMANUS, DECEASED v. CHICK HAVEN FARMS AND NATIONWIDE MUTUAL INSURANCE COMPANY

No. 6923IC48

(Filed 2 April 1969)

**1. Master and Servant § 62— workmen's compensation — employee riding in private vehicle from work site to employer's plant**

In this action for workmen's compensation benefits for the death of an employee in an automobile accident which occurred while the deceased employee was riding in the automobile of a co-employee from the work site to the employer's plant, the evidence *is held* sufficient to support findings of fact by the Industrial Commission to the effect that while it was the policy of defendant employer to transport its workers to and from job sites in company vehicles, the deceased employee had either actual or implied permission of the job foreman to ride in the personal vehicle of his co-employee on the occasion in question, and that under instruction of his supervisor the deceased employee was returning to the employer's plant to punch out and wait to load a truck when the fatal accident occurred.

**2. Master and Servant §§ 55, 96— review of finding that accident arose out of employment**

Whether an accident arises out of the employment is a mixed question of fact and law, and the findings of the Industrial Commission as to the factual portion is conclusive if supported by any competent evidence.

**3. Master and Servant § 96— failure of Industrial Commission to find certain facts**

In this action for death benefits under the Workmen's Compensation Act, failure of the Industrial Commission to make certain findings of fact in respect to defenses set up by defendant is not error where such findings would have no effect on the ultimate finding by the Commission that the deceased employee was injured by accident arising out of and in the course of his employment.

**4. Master and Servant § 94— findings required of Industrial Commission**

In a workmen's compensation proceeding, the Industrial Commission is not required to make a finding as to each detail of the evidence or as to

every inference or shade of meaning to be drawn therefrom, it being sufficient if the Commission finds all the crucial and specific facts upon which the right to compensation depends.

**5. Master and Servant § 62— accidental death while traveling in private vehicle between work site and employer's plant**

In this action under the Workmen's Compensation Act for the death of an employee in an automobile accident which occurred while deceased employee was riding in the automobile of a co-employee from the work site to the employer's plant, there is some competent evidence to support the facts found by the Commission, and the specific facts found, considered in the light most favorable to plaintiff, support the ultimate finding that the deceased employee was injured by accident arising out of and in the course of his employment.

APPEAL by defendants from Full Industrial Commission order of 10 September 1968.

The testimony at the hearing and the findings of fact tend to show that Norman Harold McManus was an employee of the defendant, Chick Haven Farms, on 13 April 1967. On this date he punched the time clock at the defendant's plant at approximately 7:15 a.m., and was assigned to work at Bobby Shoe's Chicken House located approximately 15 miles from the defendant's plant. It was the policy of the defendant to transport the workers to the job sites in company vehicles. However, on this day James Pennington, another employee, had driven his brother-in-law's car to the defendant's plant, and instead of riding in the company vehicle to the job site, Pennington, accompanied by McManus, drove his brother-in-law's vehicle. (Pennington testified that Davis, the foreman, gave him permission to drive his car to the job site that morning. Davis testified that Pennington told him that he was sick, but that Pennington did not mention driving his car and did not receive permission to do so.) The "debeaking operation" was completed at about 2:00 p.m. At this time the employees got into the panel trucks operated by the defendant in order to go back to the plant and check out. Pennington, Louis Church, and Norman McManus did not ride in the company vehicle, but rode in the car driven by Pennington. Pennington testified that as they were leaving the Bobby Shoe's premises, Davis told the workers to go to the plant, punch out, and wait until 4:00 or 4:30 p.m. to load a trailer. Davis testified that he told Pennington and those riding with him to be back at the plant around 4:00 p.m. in order to load a truck. He says he did not tell them to go to the plant and punch out because their time stopped when they left the job site in a personal car, and he did not know if they were going back to the plant.

Pennington, McManus, and Church had traveled only eight-tenths of a mile from the chicken house, when the car driven by Pennington left the highway and wrecked. McManus died as a result of injuries received in this accident.

The defendant introduced testimony which would tend to show that it was a company policy for the workers to be transported from the main plant to the job sites in company vehicles. The rule followed by the defendant was that if an employee stayed at the job site until the work was completed and rode back in the company vehicle his time would continue until he arrived back at the plant and punched out. If a person did not use company transportation, his time stopped when he left the job site. The time, in this case, is marked on a time card. Davis testified that Norman McManus had been informed of this rule. Pennington, however, testified that he had driven his car on other occasions with the permission of Davis, the foreman. Pennington also testified that when he left the job site he was going back to the plant. The evidence was that the workers were generally paid on Thursday around 4:30 or 5:00 p.m. The accident occurred on a Thursday.

There is evidence which tends to show that Davis had knowledge of the fact that McManus was returning to the plant in the vehicle driven by Pennington. Pennington testified that Davis told them to go to the plant and check out, and then wait to load a truck. Davis testified that he told them to be at the plant around 4:00 or 4:30 p.m. Davis denied giving McManus or Louis Church permission to ride in the vehicle with Pennington.

The hearing examiner made an award to plaintiffs and defendants appealed to the Full Commission. The Full Commission amended finding of fact No. 3 in three particulars, overruled the exceptions filed by defendants and adopted as its own the findings of fact, as amended, the conclusions of law and award of the hearing examiner. Defendants appealed.

*Whicker, Whicker & Vannoy by J. Gary Vannoy for plaintiff appellees.*

*Robert L. Scott for defendant appellants.*

MORRIS, J.

Defendants concede that findings of fact Nos. 5, 6, 7, 8 and 9 are the crucial findings upon which the Commission based its award. These findings are as follows:

"5. It was the policy of the defendant to furnish transportation to and from the plant in Wilkesboro when it was necessary to go from the plant to various chicken houses to work. The employees were paid during the travel time if they used company transportation. Their pay began when they punched in at the plant and ended when they punched out at the plant.

6. It was customary for the foreman to normally punch out the employees if they left the chicken farms early and did not go back to the main plant where the time clock was located. McManus left the Bobby Shoe's Chicken House at approximately 2:12 P.M., and on Monday, following April 13, 1967, Foreman Davis checked McManus out on the time clock as of 2:15 P.M.

7. Pennington had used his personal car to go from the defendant's plant to the place of work and returned on at least one other occasion with the knowledge of Davis, the supervisor. If Pennington and McManus did not have actual permission to ride in the personal car of Pennington, there was implied permission for them to use the personal car of Pennington.

8. Under the instruction of his supervisor, McManus was returning to the defendant employer's plant to check out and wait until 4:00 or 4:30 P.M. to load a trailer, when the fatal accident occurred.

9. The deceased employee, Norman Harold McManus, sustained an injury by accident arising out of and in the course of his employment with the defendant employer resulting in his death on April 13, 1967."

[1]     Defendants contend that there is no competent evidence to support these findings. As to finding of fact No. 5, defendants say that there is no finding that employees were required to use company transportation. Both the foreman and the president of Chick Haven testified that it was the company policy to provide transportation. Both also testified that the foreman had authority to give permission for the use of personal vehicles. Defendants made no specific objection in their brief to finding of fact No. 6, but the finding, in our opinion, is in accord with the evidence presented. In finding of fact No. 7 the Commission found that "Pennington and McManus did not have actual permission to ride in the personal car of Pennington, there was implied permission for them to use the personal car of Pennington." Defendants contend that the record is devoid of any evidence that McManus had permission to use Penn-

ington's car. On this question, the evidence is in conflict. Pennington testified that he obtained permission from Davis, the foreman, to drive his car to Shoe's because he was not feeling well and might have to leave before the day's work could be completed. Davis, on the other hand, testified that although Pennington did tell him he didn't feel good, the use of his personal car was not mentioned and he did not give him such permission. He testified that he didn't know that Pennington had driven his own car until he got to Shoe's and did not know of his own knowledge who had ridden with him. He testified that during the day he advised the employees that there would be a truck to load around 4:00 or 4:30, and that when the work was completed at Shoe's and as he was coming out of the chicken house, he saw Pennington about to drive off. In the car with him were McManus and Church. He hollered at them. They pulled back up and stopped, and he told them to be at the plant between 4:00 and 4:30 to load a truck. Pennington, however, testified that Davis gave him permission to drive to Shoe's; that Davis and McManus were talking just prior to leaving Chick Haven; that Davis also told him he could take his car back to Chick Haven. He also testified that he, McManus and Church were leaving Shoe's when Davis told them to go to the plant, punch out and wait for a truck to be loaded. Pennington further testified that at that time he told Davis that he was going to the plant. It is true that there is no evidence of direct permission to McManus. However, it appears to us that the evidence raises a permissible inference that the direction given to go back to the plant, punch out, and wait to load a truck included the passengers in Pennington's car and was understood by them as instructions to them by the foreman.

[2]   Finding of fact No. 9, that the employee "sustained an injury by accident arising out of and in the course of his employment with the defendant employer resulting in his death on April 13, 1967" is a mixed question of law and fact, *Allred v. Allred-Gardner, Inc.,* 253 N.C. 554, 117 S.E. 2d 476, and the finding of the Commission as to the factual portion is conclusive if supported by any competent evidence. *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308. Since there is some competent evidence to support the facts found by the Commission, we are bound by them.

Although the evidence was sharply conflicting, there was some evidence that employees riding in Pennington's car were to punch the time clock when they returned to the plant and would be paid for that time. All of the evidence was to the effect that the employees in Pennington's car were on the route back to the plant and that the accident occurred less than one mile from Shoe's.

Defendants argue that the Industrial Commission failed to find facts material to the defenses they asserted. The defendants rely on *Taylor v. Dixon*, 251 N.C. 304, 111 S.E. 2d 181, for this argument. In that case the employee was hired to operate a chain saw, and he was expressly forbidden to operate the tractor. Despite these orders by his employer he operated the tractor and was injured. The hearing officer found that the plaintiff was employed by the defendant; that on the occasion in question he was operating a tractor pulling logs when the tractor turned over on him; and that the accident arose out of and in the course of his employment. As a defense against this claim the employer had argued and introduced evidence that the employee had stepped outside the boundaries defining the work he was employed to do; that he had no duties concerning the tractor; and that the accident was not the result of a risk incident to the employment. The Court held that the Industrial Commission could not fail or refuse to make specific findings of fact in respect to specific defenses set up by the defendant.

Did the Industrial Commission fail to make specific findings of fact in respect to certain defenses set up by the defendant? This question is raised in assignment of error No. 13. Defendants say that the hearing commissioner failed to find as a fact that the defendant divided its labor force into crews; that Harold McManus was a member of a crew and on the day in question his crew was assigned to work at Bobby Shoe's Chicken House. These facts would appear to be sufficiently stated in findings of fact Nos. 2 and 5, although not stated in the exact language suggested by the defendants.

[3] Defendants argue that it should have been found that the employer furnished transportation from the plant to the job sites; that the crew members were required to ride in the company transportation; and that this policy had been communicated to Norman McManus. In finding of fact No. 2 it is stated: "It was a company policy that all employees of the defendant employer ride to and from the defendant's plant to places of work assigned them in the company vehicles. The defendant employer furnishes transportation for the employees as an incident of contract of employment." This policy of the employer was again set out in finding of fact No. 5. There was no specific finding that this policy had been communicated to McManus. However, the hearing officer did not base his decision on McManus' lack of knowledge of this policy. Therefore, since such a finding would have no effect on the ultimate finding, it would appear that this omission was not material or prejudicial.

Defendants argue that the hearing officer failed to find as a fact that if a crew member traveled in company transportation, he was paid until he returned to the plant and punched out; but if he did not leave the job site in company transportation, his time was stopped as of the time he left the job site. This contention is included in finding of fact No. 5. There it is stated: "The employees were paid during the travel time *if* they used company transportation. Their pay began when they punched in at the plant and ended when they punched out at the plant." (Emphasis added.) Here, too, the defendants argue that there should have been a specific finding of fact that McManus had actual knowledge of this rule. Again, this would not appear to be prejudicial or material.

Defendants argue that it should have been found as a fact that company transportation was available on the afternoon Church and McManus left the job site in Pennington's car, and that in electing to ride in Pennington's car McManus exposed himself to the same hazard of injury on the public highway as any other person. In finding of fact No. 3 the hearing officer did find that "There was room in the truck to transport Pennington and McManus *to* the chicken farm." (Emphasis added.)

**[4]**    Defendants argue that the hearing officer should have found that Pennington was sick on 13 April and did not plan to load the truck, and when he left the job site he was planning to go to the doctor. He says that it should have been found that no special permission was given by Davis to McManus allowing him to ride in Pennington's personal car; that in waiting until the following Monday to mark the time cards, the employer was following the usual customary practice; that McManus had no duties to perform for the employer between 2:15 p.m. and 4:30 p.m. in that he was not obligated to load the truck; that Davis had authority to permit an employee to ride in personal transportation only in cases of emergencies, and that there was no emergency in this situation; and, that at the time of the accident, McManus was engaged in a personal mission. On each of these contentions there was conflicting testimony.

"The Commission is not required to make a finding as to each detail of the evidence or as to every inference or shade of meaning to be drawn therefrom. When the specific, crucial findings of fact are made, and the Commission thereupon finds that plaintiff was injured by accident arising out of and in the course of his employment, we consider such specific findings of fact, together with every reasonable inference that may be drawn therefrom, in plaintiff's favor in determining whether there is a

factual basis for such ultimate finding." *Guest v. Iron and Metal Co.,* 241 N.C. 448, 85 S.E. 2d 596.

[5] We find that there is some competent evidence to support the facts found by the Commission and that the specific facts found, considered in the light most favorable to plaintiff, support the factual element in the ultimate finding. The ultimate finding — that Norman McManus was injured by accident arising out of and in the course of his employment — is upheld.

Affirmed.

CAMPBELL and BROCK, JJ., concur.